# In the United States Court of Federal Claims

### No. 22-229C
### Filed: March 31, 2023

```
* * * * * * * * * * * * * *   *
                                 *
RODNEY B. BOYCE,                 *
                                 *
                 Plaintiff,      *
                                 *
        v.                       *
                                 *
                                 *
                                 *
UNITED STATES,                   *
                                 *
                 Defendant.      *
                                 *
* * * * * * * * * * * * * *   *
```

**Robert Feldmeier**, Law Offices of Robert Feldmeier, Raleigh, NC, for plaintiff.

**Vincent de Paul Phillips, Jr.**, Senior Trial Counsel, Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for defendant. With him were **William J. Grimaldi**, Assistant Director, Commercial Litigation Branch; **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brian M. Boynton**, Principal Deputy Assistant Attorney General, Civil Division. **Maj. Scott W. Medlyn**, Civil Law and Litigation Domain, Judge Advocate General's Corps, United States Air Force, Joint Base Andrews, MD, of counsel.

# O P I N I O N

<u>**HORN, J.**</u>

The above captioned case was filed by Rodney B. Boyce, a former Airman in the United States Air Force, who alleges that the Air Force Board for Correction of Military Records (AFBCMR) improperly denied plaintiff's request "to recoup underpayment of Plaintiff's military pay and allowances." Plaintiff claims in the case currently before the court that "[t]his underpayment stems from the AFBCMR's arbitrary and capricious decision to deny him retroactive promotion and the pay appertaining thereto for the period in which he was confined for offenses of which he was ultimately acquitted." (alteration added). After plaintiff filed his complaint, plaintiff filed a motion for judgment on the Administrative Record, and in response, defendant filed a motion to dismiss and/or in the alternative, a motion for judgment on the Administrative Record. All the motions have been fully briefed.

**FINDINGS OF FACT**

Plaintiff entered active duty with the United States Air Force on December 15, 2009, at the rank of Airman First Class (E-3). On October 14, 2011, plaintiff received non-judicial punishment under Article 15 of the Uniform Code of Military Justice (UCMJ),[1] for assaulting his wife, also an Airman First Class (E-3), by pushing and holding her down. Plaintiff's commanding officer reprimanded him for failure to control his anger and for resorting to physical violence, which his commander deemed "inexcusable" for a member of the Air Force. Plaintiff's "Record of Article 15" indicated that he was given the following punishment: "Reduction [from E-3] to the grade of Airman [E-2], suspended through 13 April 2012, after which time it will be remitted without further action, unless sooner vacated. Reprimand." (alterations added).[2] On November 15, 2011, plaintiff violated a lawful order not to contact his wife by going to her house to speak to her. Because plaintiff violated the no-contact order before April 13, 2012, the date on which plaintiff's suspended punishment of demotion to E-2 would have been remitted and his rank restored to E-3, plaintiff was reduced in rank to Airman (E-2) with a date of rank of October 14, 2011, effective November 15, 2011.

In April 2012, plaintiff received a Letter of Reprimand "for failure to follow technical data during a maintenance task." On August 21, 2012, plaintiff received a referral Enlisted Performance Report (EPR), which, according to Air Force Instruction 36-2406, *Officer and Enlisted Evaluations Systems*, Ch. 1 ¶ 1.10.3.1 (June 28, 2022) (emphasis in original), is an evaluation in which the evaluator provides comments "that are derogatory in nature, imply or refer to behavior incompatible with or not meeting AF [Air Force] standards, and/or refer to disciplinary actions." Id. (alteration added).[3] Referral EPRs may

---

[1] Article 15 of the UCMJ, "Commanding officer's non-judicial punishment," authorizes commanders to levy administrative sanctions, including reduction in grade, loss of pay, restriction to quarters, etc., for minor violations of the UCMJ. See 10 U.S.C. § 815 (2018). "Nonjudicial Punishment is a disciplinary measure more serious than the administrative corrective measures" imposed by military commanders, such as counseling, admonitions, reprimands, exhortations, disapprovals, criticisms, censures, reproofs, rebukes, extra military instruction, and administrative withholding of privileges, "but less serious than trial by court-martial." See Manual for Courts-Martial, Part V, ¶ 1.B (2016).

[2] With respect to the suspension and remittance of a sentence, Rule for Court-Martial (R.C.M.) 1107(a) (2016) provides:

> (a)  *In general.* Suspension of a sentence grants the accused a probationary period during which the suspended part of a sentence is not executed, and upon the accused's successful completion of which the suspended part of the sentence shall be remitted. Remission cancels the unexecuted part of a sentence to which it applies. The unexecuted part of a sentence is that part of the sentence that has not been carried out.

Id. (emphasis in original).

[3] Air Force Instruction 36-2406, *Officer and Enlisted Evaluations Systems*, Ch. 1 ¶ 1.10.3.1 (June 28, 2022) (emphasis in original), provides in full:

affect an Airman's eligibility for other personnel actions such as promotions. See Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) (Air Force Instruction 36-2502), Table 1.1, Block D, Row 21 (emphasis in original).[4] The August 21, 2012 referral EPR stated that plaintiff "does not meet" the "standards, conduct, character, & military bearing" of an Airman because plaintiff "displayed unprofessional behavior; involved in domestic altercation—received Article 15" and subsequently "relapsed on unfavorable conduct; violated no-contact order." On December 17, 2012, plaintiff again received non-judicial punishment under Article 15, UCMJ, this time for dereliction of duty. The December 17, 2012 "Record of Article 15" stated:

> You, who should have known of your duties at or near Aviano Air Base, Italy, on or about 14 November 2012, were derelict in the performance of those duties in that you negligently failed to repair a damaged wire bundle on the left wing leading edge of an aircraft, as it was your duty to do. Reduction to the grade of Airman Basic [E-1], suspended through 26 June 2013, after which time it will be remitted without further action, unless sooner vacated.

(alteration added). The December 17, 2012 "Record of Article 15" also included a reprimand from plaintiff's commander, which stated:

> You are hereby reprimanded! In the Air Force, dereliction of duty is a criminal act. This unit, wing, and indeed the entire Air Force cannot function when members are derelict in their duties. Furthermore, this type of misconduct ultimately endangers the mission. I cannot and will not tolerate this type of behavior in this unit and I expect you to act as a model airman

---

Comments in any OPR [Officer Performance Report], EPR [Enlisted Performance Report], LOE [Letter of Evaluation], or TR [Training Report] (to include attachments), regardless of the ratings, that are derogatory in nature, imply or refer to behavior incompatible with or not meeting AF standards, and/or refer to disciplinary actions. **(T-1)**. [Tier 1]. When considering the Airman's ability to meet standards, consider unacceptable performance as actions that are incompatible with, and/or Airmen who have ***routinely*** (a repeated inability to meet standards that would render the aggregated performance assessment over the entire reporting period as below AF standards and expectations) and/or ***significantly*** (a single instance where failure to meet standards is either egregious in nature or so far short of a standard that it impacts overall aggregated performance assessment) failed to adhere to established AF standards and expectations. **(T-1)**.

Air Force Instruction 36-2406, Ch. 1 ¶ 1.10.3.1 (emphasis in original; alterations added).

[4] Both plaintiff and defendant cite to Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) (emphasis in original), which was in force on February 26, 2015 and which, according to the AFBCMR, is the earliest date that plaintiff would have been eligible for promotion.

in the future. A repeat of this or any other type of misconduct may result in appropriately severe consequences.

On February 23, 2013, plaintiff's supervisor executed a "Selective Reenlistment Program Consideration" form in which plaintiff's supervisor recommended that plaintiff not be selected for reenlistment, which his unit commander approved. The remarks section of the "Selective Reenlistment Program Consideration" form stated:

> Amn [Airman] Boyce received two Article 15s. One for domestic issues in November 2011[5] and a second in December 2012 for failure to complete a maintenance action that he documented in 781A aircraft forms as being complete. He also received a Letter of Reprimand in April 2012 for failure to follow technical data during a maintenance task. Amn Boyce has a strong work ethic, and contributes to his work center, but has shown he can not [sic] be trusted to complete task as directed by tech data.

(alterations and footnote added). As a result of plaintiff's non-selection recommendation for reenlistment, plaintiff was "ineligible for reenlistment/promotion." See Air Force Instruction 36-2502, Table 1.1, Block D, Row 15 (an "Airman is ineligible for promotion during a particular cycle when he or she (includes testing, consideration if already tested, cancellation of promotion sequence number if previously selected) is denied or not selected for reenlistment by commander"). As noted above, the supervisor's justification for plaintiff's non-reenlistment included the two Article 15 "Commanding officer's non-judicial punishment[s]" (alteration added), and the April 2012 "Letter of Reprimand."

On June 10, 2013, plaintiff was denied the Air Force Good Conduct Medal. As justification for this denial, plaintiff's commander cited the plaintiff's two "Commanding officer's non-judicial punishment[s]." (alteration added).[6] On August 19, 2013, plaintiff was

---

[5] The "Selective Reenlistment Program Consideration" form refers to plaintiff's first Article 15 "Commanding officer's non-judicial punishment" as having occurred in November 2011 because that is when plaintiff's nonjudicial punishment of reduction in rank to E-2 became effective. The parties and the court, however, refer to this Article 15 "Commanding officer's non-judicial punishment" as having occurred on October 14, 2011 because, as a result of his violation of the no-contact order, plaintiff was officially reduced to the rank of E-2 with a date of rank of October 14, 2011.

[6] Regarding the criteria for the Air Force Good Conduct Medal, the Air Force Personnel Center states:

> It is awarded to Air Force enlisted personnel for exemplary conduct during a three-year period of active military service, (or for a one-year period of service during a time of war). Persons awarded this medal must have had character and efficiency ratings of excellent or higher throughout the qualifying period, including time spent in attendance at service schools, and there must have been no convictions of court martial during this period.

issued a second referral EPR, which stated that he "does not meet" his "primary/additional duties" in the performance of his job. Specifically, the August 19, 2013 referral EPR noted that plaintiff's failure to meet his primary duties included a "judgment lapse; mbr [member] failed to complete mx [maintenance] documented in a/c 781A—received Article 15." (alterations added).

On January 6, 2014, the general court-martial convening authority referred sexual assault charges against plaintiff. See United States v. Boyce, 76 M.J. 242, 246 (C.A.A.F. 2017).[7] As explained by the United States Air Force Court of Criminal Appeals, on March 15, 2014, plaintiff was tried and convicted at a general court-martial for "rape on divers[8] occasions and two specifications of assault consummated by a battery, in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920, 928 [(2012)]." United States v. Boyce, No. ACM 38673, 2016 WL 1276663, at *1 (A.F. Ct. Crim. App. Mar. 24, 2016), rev'd and remanded, 76 M.J. 242 (C.A.A.F. 2017) (alterations added). "The panel sentenced Appellant to a reduction in grade to E-1, forfeiture of all pay and allowances, and confinement for four years." United States v. Boyce, 76 M.J. at 244. Pursuant to his sentence, plaintiff entered confinement on March 15, 2014. On August 6, 2014, while confined, plaintiff received a third referral EPR, which stated that he "did not meet" "standards, conduct, character & military bearing" due to his court-martial conviction. On March 24, 2016, plaintiff's court-martial conviction was affirmed by the United States Air Force Court of Criminal Appeals. See United States v. Boyce, 2016 WL 1276663, at *1. The Air Force Court of Criminal Appeals stated:

> The events underlying Appellant's convictions took place between on or about 1 October 2010 and on or about 21 September 2011. During that period of time, Appellant raped SrA [Senior Airman] DR[9] by force and assaulted her on multiple occasions.
>
> On one occasion in February 2011, after a night of drinking, Appellant and SrA DR had an argument. The argument escalated, and Appellant called SrA DR a variety of derogatory names and lodged other insults. He shoved her into a wall so hard that she bounced off, hit her eye on the corner of a dresser, and fell to the floor. While she lay on the floor disoriented, Appellant

---

Air Force Good Conduct Medal, https://www.afpc.af.mil/Fact-Sheets/Display/Article/421952/air-force-good-conduct-medal/ (last visited March 31, 2023).

[7] One of the assaults consummated by battery was also the basis of plaintiff's October 14, 2011 Article 15 nonjudicial punishment. See United States v. Boyce, 76 M.J. at 244.

[8] "Divers" means "Various, several, sundry; a collective term grouping a number of unspecified persons, objects, or acts." BLACK'S LAW DICTIONARY, https://thelawdictionary.org/divers/ (last visited March 31, 2023).

[9] The United States Air Force Court of Criminal Appeals referred to the victim in plaintiff's court-martial as "DR." See United States v. Boyce, 2016 WL 1276663, at *1.

> pinned her down so she could not move, called her more names, and raped her. SrA DR was so traumatized that she urinated on the floor. When Appellant noticed that SrA DR had lost control of her bladder, he remarked that he thought he had killed her.

Id. (alterations added).

Plaintiff subsequently appealed to the United States Court of Appeals for the Armed Forces. See generally United States v. Boyce, 76 M.J. 242. On May 22, 2017, the United States Court of Appeals for the Armed Forces reversed plaintiff's conviction and authorized the convening authority to order a rehearing in his case due to the appearance of unlawful command influence. See id. The United States Court of Appeals for the Armed Forces stated that "'the appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.'" Id. at 248 (quoting United States v. Lewis, 63 M.J. 405, 415 (C.A.A.F. 2006)).

In United States v. Boyce, the United States Court of Appeals for the Armed Forces found that there was the appearance of unlawful command influence in plaintiff's court-martial case, and stated:

> It is sufficient for an accused to demonstrate the following factors in support of a claim of an appearance of unlawful command influence: (a) facts, which if true, constitute unlawful command influence; and (b) this unlawful command influence placed an "intolerable strain" on the public's perception of the military justice system because "an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding."

United States v. Boyce, 76 M.J. at 249 (quoting United States v. Lewis, 63 M.J. at 415). In addition, the United States Court of Appeals for the Armed Forces stated,

> unlike actual unlawful command influence where prejudice to the accused is required, no such showing is required for a meritorious claim of an appearance of unlawful command influence. Rather, the prejudice involved in the latter instance is the damage to the public's perception of the fairness of the military justice system as a whole and not the prejudice to the individual accused.

United States v. Boyce, 76 M.J. at 248–49.[10]

_____

[10] With respect to plaintiff's appeal, the United States Court of Appeals for the Armed Forces in United States v. Boyce, indicated that "[t]he underlying facts leading to the charges and convictions in this sexual assault case are not directly relevant to the issue before us." United States v. Boyce, 76 M.J. at 244 (alteration added). The United States Court of Appeals for the Armed Forces opinion focused on the issue of "unlawful command influence." See id.

According to the United States Court of Appeals for the Armed Forces decision, the governing standard in military criminal cases in effect at the time of Mr. Boyce's military justice proceedings, was that if an accused alleged unlawful command influence, he or she needed only to present "some evidence" of unlawful command influence, at which point "the burden then shifts to the government to rebut the allegation. Specifically, the government bears the burden of proving beyond a reasonable doubt that either the predicate facts proffered by the appellant do not exist or the facts as presented do not constitute unlawful command influence." Id. at 249.

The United States Court of Appeals for the Armed Forces opinion in United States v. Boyce, reviewed the possible unlawful command influence and stated the following:

> During the relevant time period, Lieutenant General (Lt Gen) Craig A. Franklin was the commander of the Third Air Force. On February 26, 2013, Lt Gen Franklin used his clemency authority under Article 60, UCMJ, 10 U.S.C. § 860 (2012), to set aside the findings and sentence in the unrelated case of United States v. Wilkerson [no published decision]. Wilkerson was a lieutenant colonel (Lt Col) in the Air Force and had been convicted at court-martial of aggravated sexual assault. Lt Gen Franklin's decision to set aside Wilkerson's conviction was against the advice of his Staff Judge Advocate (SJA), Colonel (Col) Joseph Bialke, who recommended clemency in the form of an adjusted sentence.

United States v. Boyce, 76 M.J. at 244–45 (alteration added). The United States Court of Appeals for the Armed Forces in United States v. Boyce, noted that "Lt Gen Franklin's clemency action garnered considerable negative attention from Congress and the media," which further intensified when Lieutenant General Franklin "later tried to intervene on behalf of then-Lt Col Wilkerson in order to have his promotion to colonel approved upon his release from confinement." Id. at 245.

The United States Court of Appeals for the Armed Forces opinion in United States v. Boyce, 76 M.J. 242, also discussed Lieutenant General Franklin's prior decision not to refer charges[11] against an Airman in a different sexual assault case:

> Lt Gen Richard Harding, called Col Bialke regarding the Wright case. [See United States v. Wright, 75 M.J. 501,] 503 [(A.F. Ct. Crim. App. 2015)]. Col Bialke said that Lt Gen Harding told him: "the failure to refer the case to trial would place the Air Force in a difficult position with Congress; absent a 'smoking gun,' victims are to be believed and their cases referred to trial; and dismissing the charges without meeting with the named victim violated an Air Force regulation." Id. On December 20, 2013, Deborah Lee James was appointed as Secretary of the Air Force. On December 23, 2013, Lt Gen Franklin read what he described as an article in which a senator indicated he would be retiring soon. On December 27, 2013, the Chief of Staff of the Air Force, Gen Welsh, telephoned Lt Gen Franklin and informed him that the new Secretary had "lost confidence" in him and that he had two options: voluntarily retire from the Air Force at the lower grade of major

---

[11] See United States v. Wright, 75 M.J. 501 (A.F. Ct. Crim. App. 2015).

general, or wait for the Secretary to remove him from his command in the immediate future. Three hours after this call, Lt Gen Franklin decided to retire. In his written retirement request, Lt Gen Franklin stated: "My decisions as a General Court Martial convening authority [(GCMCA)] have come under great public scrutiny," and "media attention . . . will likely occur on subsequent sexual assault cases I deal with."

United States v. Boyce, 76 M.J. at 245–46 (first two alterations added; remaining alterations in original; omission in original).

According to the United States Court of Appeals for the Armed Forces in United States v. Boyce, on December 27, 2013, Lieutenant General Franklin "received the referral package regarding Appellant's [Mr. Boyce's] case, which included sexual assault charges. On January 6, 2014, Lt Gen Franklin referred Appellant's [Mr. Boyce's] case to a general court-martial." Id. at 246 (alterations added). On January 28, 2014, Lieutenant General Franklin was interviewed by plaintiff's defense counsel, during which Lieutenant General Franklin stated that "he decided to refer Appellant's [plaintiff's] case 'independently'; there 'probably is an appearance of UCI [unlawful command influence] but I wasn't affected by it,' and it would be 'foolish to say there is no appearance of UCI.'" Id. (first alteration added; second alteration in original). Plaintiff's defense counsel subsequently filed a motion to dismiss all charges against plaintiff due to unlawful command influence. See id. According to the United States Court of Appeals for the Armed Forces,

[i]n ruling on the defense's motion, the military judge stated that although the defense had met its initial burden of demonstrating that there was some evidence of unlawful command influence:

[I]t had absolutely no impact on this particular case. There could be an argument, in fact, that General Franklin may be the most bombproof of any convening authority out there simply because of . . . his retirement, and the fact that he has, on occasion, seemingly gone against the interests of others in the military.

Id. (first alteration added; second alteration and omission in original).

On appeal, the United States Court of Appeals for the Armed Forces found that, "[u]nder the totality of these circumstances, we conclude that Appellant [Mr. Boyce] has shown 'some evidence' of unlawful command influence by the Secretary of the Air Force and/or the Chief of Staff of the Air Force regarding the referral of the instant case to a general court-martial." United States v. Boyce, 76 M.J. at 252 (alterations added) (quoting United States v. Stoneman, 57 M.J. 35, 41 (C.A.A.F. 2002)). The United States Court of Appeals for the Armed Forces also found that "the Government has not met its burden of proving beyond a reasonable doubt that the relevant facts cited above did not exist or that these facts did not constitute unlawful command influence." Id. The United States Court of Appeals for the Armed Forces in United States v. Boyce concluded "that the appearance of unlawful command influence in this case cannot go unaddressed.

Accordingly, we reverse the findings and sentence in this case without prejudice and return the case to the Judge Advocate General of the Air Force." Id. at 253.[12]

While plaintiff's appeal to the United States Court of Appeals for the Armed Forces was pending, on February 13, 2017, plaintiff was released from confinement. According to the AFBCMR, "[t]he applicant's [plaintiff's] original date of separation (DOS) of 27 February 2017, was adjusted to 8 March 2017 by his Military Personnel Flight to allow him enough time to out-process after his release from confinement since he was at his expiration of term of service (ETS)." (capitalization in original; alterations added). Plaintiff's complaint alleges that there was "no documentation of any misconduct during Plaintiff's term of confinement." (capitalization in original). On June 12, 2017, a revised Department of Defense (DD) Form 214 was issued to plaintiff which corrected his grade to reflect Airman (E-2), which was his rank before he was reduced to the rank of E-1 as part of his sentence from his court-martial conviction. Following the United States Court of Appeals for the Armed Forces' reversal of plaintiff's case, in May 2018, plaintiff was retried by court-martial and acquitted of all charges. On September 6, 2018, the convening authority issued General Court Martial Order (GCMO) No. 17, which announced plaintiff's acquittal and stated that "all rights, privileges, and property of which the accused has been deprived by virtue of the sentence in his former trial will be restored."

On July 30, 2019, following plaintiff's acquittal and after the convening authority issued GCMO No. 17, plaintiff applied to the AFBCMR seeking to have his military records corrected to reflect a different date of separation from active duty, to be retroactively promoted to Technical Sergeant (E-6) based on his time in service, and to receive back pay for his time in confinement, as well as for time pending retrial. At the AFBCMR, plaintiff argued:

---

[12] The court notes that, as articulated in United States v. Gattis, 81 M.J. 748, 754 (N.M. Ct. Crim. App.), review denied, 82 M.J. (C.A.A.F. 2021), plaintiff's case at the United States Court of Appeals for the Armed Forces, United States v. Boyce, 76 M.J. 242, received attention from Congress, which ultimately resulted in changes to the Uniform Code of Military Justice. In United States v. Gattis, the United States Navy-Marine Corps Court of Criminal Appeals stated:

> Less than three years after CAAF [United States Court of Appeals for the Armed Forces] issued its opinion in Boyce, Congress amended Article 37, UCMJ, ("Command influence") to require a showing of material prejudice to the substantial rights of the accused before a finding or sentence of a court-martial may be held incorrect on the ground on a violation of that section. The effective date of this amendment to Article 37, UCMJ, was 20 December 2019. Acts of apparent UCI [unlawful command influence] committed prior to the effective date of the revision to Article 37, UCMJ did not require a showing of prejudice to an accused to constitute a meritorious claim of UCI.

United States v. Gattis, 81 M.J. at 754 (alteration added).

**Promotion to E-6 Necessary as a Matter of Equity**: As a matter of equity, this board should retroactively promote Petitioner to E-6[13] and adjust his DD Form 214 to reflect that. Petitioner has the necessary time in grade and time in service to be eligible for Technical Sergeant. Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs*, Table 2.2. Petitioner was not able to meet the educational requirements for Technical Sergeant because he was confined. Petitioner was confined for offenses of which he was, after re-hearing, acquitted. He is therefore not guilty of these, or any, offenses. Inability to complete Air Force educations [sic] requirements was among the collateral consequences which Petitioner suffered as a result of his wrongful confinement. This board should find that, but for his confinement for offenses of which Petitioner is not guilty, he would have completed the necessary educational requirements. As a matter of equity, this board should adjust Petitioner's rank of discharge to reflect what he would likely have achieved, but for an improper, lengthy period of confinement.

(alteration, second emphasis, and footnote added; first emphasis and capitalization in original).

With respect to a claim by plaintiff of entitlement to promotion, the AFBCMR considered, and referenced in its decision, an advisory opinion from the Air Force Personnel Center/Enlisted Promotions, dated September 13, 2019. The AFBCMR indicated:

AFPC/DP2SPP [Air Force Personnel Center/Enlisted Promotions] recommends denying the applicant's request for retroactive promotion to the grade of E-6. The applicant entered active duty on 15 December 2009, as an airman first class (E-3). Documentation provided by the applicant and analysis of the facts revealed his grade was E-2, with a date of rank (DOR) of 14 October 2011, when he entered confinement directed by GCMO No. 22, dated 4 September 2014.

In accordance with AFI [Air Force Instruction] 36-2502, *Enlisted Airman Promotion/Demotion Programs*, the applicant would have been eligible for promotion to senior airman (E-4) on 26 February 2015. Based solely on an E-4 DOR of 26 February 2015, the first time the applicant would have been eligible for promotion consideration to staff sergeant (E-5) was cycle 16E5. They are unable to provide promotion consideration to E-5 or E-6, as there are no tests on file (as the applicant never held the rank of E-4 and therefore was never eligible to test for promotion). Tests are an integral part of the weighted factors and the promotion selection process. Without test scores, it is not possible to provide promotion consideration. However, they do recommend removal of the 14 March 2014, referral EPR [Enlisted

---

[13] In the complaint filed in this court, however, plaintiff alleges that he is entitled to E-4 or E-3.

Performance Report] since its basis was the court-martial conviction, which was set aside.

(alterations added; emphasis in original).

The September 13, 2019 advisory opinion, referenced in the AFBCMR decision, from the Air Force Personnel Center/Enlisted Promotions indicated that, prior to his court-martial, plaintiff had received Article 15 "Commanding officer's non-judicial punishment," which included a reduction in rank,[14] a reprimand, two referral EPRs,[15] and a second Article 15 "Commanding officer's non-judicial punishment" for dereliction of duty. The September 13, 2019 advisory opinion from the Air Force Personnel Center/Enlisted Promotions further discussed that:

> Minimum eligibility requirements for promotion consideration to SSgt [Staff Sergeant (E-5)] are a 5 skill level, 6 months as a SrA [Senior Airman (E-4)], 3 years TIS [time-in-service], completion of Airman Leadership School (in order to pin on, if selected), continuous service on active duty until the effective date of promotion (if selected) and the recommendation, in writing, of the promotion authority. Based solely on a SrA DOR [date of rank] of 26 Feb 15, the first time the applicant would have been eligible for promotion consideration to SSgt was cycle 16E5. We would be unable to provide promotion consideration to SSgt as there are no tests (SKT/PFE) [Specialty Knowledge Test/Promotion Fitness Examination] on file (as the applicant never held the rank of SrA and therefore was never eligible to test for promotion). The SKT and PFE are an integral part of the weighted factors and the promotion selection process. Without test scores, it is not possible to provide promotion consideration.

(alterations added). In addition, the September 13, 2019 advisory opinion from the Air Force Personnel Center/Enlisted Promotions stated:

> Based on the documentation provided by the applicant and analysis of the facts, there **IS NO** evidence of an error or injustice as applicant was never eligible for promotion consideration to either TSgt [technical sergeant] or SSgt [staff sergeant]. Furthermore, Air Force policy does not allow for an automatic promotion as the applicant requests/suggests.

---

[14] Plaintiff's rank was reduced from E-3 to E-2 following his Article 15 for assault of his wife. The reduction in rank was part of a suspended punishment, provided that if Mr. Boyce did not demonstrate any further misconduct during a probationary period, his rank would have been restored to E-3. Plaintiff, however, violated a no-contact order before the probationary period was over and, as a result, his rank was officially reduced to E-2.

[15] As described in the above quote, the March 14, 2014 referral EPR was not included as a basis for the September 13, 2019 advisory opinion from the Air Force Personnel Center/Enlisted Promotions given that its basis was what resulted in plaintiff's court-martial conviction.

(alterations added; emphasis and capitalization in original). The September 13, 2019 advisory opinion from the Air Force Personnel Center/Enlisted Promotions also stated that "should the Board choose to provide further relief regarding the applicant's rank," the AFBCMR could change plaintiff's records to reflect a rank of Senior Airman (E-4) as of February 26, 2015 given its equitable authority. After consideration, on July 21, 2020, the AFBCMR concluded that plaintiff's records should be changed to Airman (E-2).

The AFBCMR stated that

[a]fter reviewing the applicant's master personnel record, it has been determined that the applicant served on continuous active duty service as an Air Force enlisted member from 15 Dec 09 through 8 Mar 17 for a period of 7 years, 2 months, and 24 days. In accordance with General Court-Martial Order No. 17, 6 Sep 18, the findings of guilt along with the sentence promulgated in GCMO [General Court-Martial Order] No. 22 were set aside and all rights, privileges, and property of which the accused had been deprived by virtue of the sentence in his former trial were restored. Based on the GCMO No. 17, his lost time on his DD 214, block 29 [dates of lost time during this period] should be removed, and block 12c, "Net Active Service this Period", should be corrected.

(alterations added).

On March 1, 2022, plaintiff filed his case in this court. Plaintiff argues in his complaint that his October 14, 2011 Article 15 reduction to the rank of E-2 was invalid and that he is entitled to automatic promotion to E-3 and, thereafter, to E-4. With respect to the automatic promotion to E-3, plaintiff argues that "[t]his court should consider Plaintiff [sic] reduction to E-2 as void because he was subsequently acquitted of the allegation for which an Article 15, UCMJ proceeding reduced him." (alterations added) Plaintiff argues "[t]his court should consider Plaintiff's reduction to E-2 to be void and consider him instead to be an E-3 at all relevant times." (alteration added). With respect to a promotion to E-4, plaintiff alternatively argues in his complaint that

but for his reversed conviction, Plaintiff would have been eligible for promotion to E-4 on 26 February 2015 under provision of Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs*. Unlike promotion to subsequent ranks, which is discretionary in promotion boards, promotion to E-3 and then to E-4 is automatic, absent misconduct during the relevant rating period. Plaintiff's administrative record from the period in which he was confined indicates no misconduct. He is therefore due retroactive promotion because, but for his reversed conviction, his promotion to E-4 would have been automatic, based solely upon time in grade.

(emphasis in original). Plaintiff reiterates his claims in his motion for judgment on the Administrative Record.

In response, defendant moved to dismiss plaintiff's claims and, alternatively, for judgment on the Administrative Record. In the motion to dismiss, defendant argues that

"[t]he Court should dismiss Mr. Boyce's claim as nonjusticiable because he seeks to have this court retroactively promote him as a matter of equity." (alteration added). Defendant asserts that plaintiff "asks this Court to exercise equitable authority it does not have to promote him retroactively to Senior Airman (E-4)." Defendant also argues that "[t]he AFBCMR's decision is in accordance with law because promotions to Airman First Class (E-3) and Senior Airman (E-4) are not automatic and the record shows Mr. Boyce was ineligible for these promotions." (alteration added). Defendant asserts that plaintiff

> has alleged no errors committed by the Air Force BCMR in not retroactively promoting him above the rank of Airman (E-2). Rather, he asks this Court to exercise equitable authority it does not have to promote him retroactively to Senior Airman (E-4) by first "consider[ing his] reduction to E-2 to be void and consider him instead to be an E-3 at all relevant times," and thereafter by promoting him to Senior Airmen [sic] (E-4) after the requisite time in service and grade. But this Court lacks the authority to grant such relief, which renders this case nonjusticiable.

(first alteration in original; second alteration added; internal reference omitted). Citing Voge v. United States, 844 F.2d 776, 780 (Fed. Cir. 1988), defendant states that "[i]t is well settled that a court is without authority to grant a promotion absent a statute or regulation entitling a service member to a promotion as a matter of law." (alteration added). Defendant also cites to Antonellis v. United States, 723 F.3d 1328, 1333 (Fed. Cir. 2013), and argues that "[t]he Military Pay Act, 37 U.S.C. § 204 [(2018)], does not give rise to a right to the pay of a higher rank for which the plaintiff was not selected." (alterations added). As reflected above, the defendant's motion to dismiss and the parties' cross-motions for judgment on the Administrative Record have been fully briefed.

## DISCUSSION

Mr. Boyce states in his complaint:

> Plaintiff's claim is a military pay claim brough [sic] to recoup underpayment of Plaintiff's military pay and allowances. This underpayment stems from the AFBCMR's arbitrary and capricious decision to deny him retroactive promotion and the pay appertaining thereto for the period in which he was confined for offenses of which he was ultimately acquitted.

(alteration added).

In its motion to dismiss, defendant argues that Mr. Boyce's claims are nonjusticiable in this court. The United States Supreme Court has held that "[i]n the military arena, because of the admonition against court interference with military matters, see Orloff v. Willoughby, 345 U.S. 83, 94, 73 S. Ct. 534, 97 L. Ed. 842 (1953), justiciability is an especially appropriate inquiry." Roth v. United States, 378 F.3d 1371, 1385 (Fed. Cir. 2004) (alteration added); see also Bader v. United States, 160 Fed. Cl. 529, 542–43 (2022) ("Typically, 'the merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review.'" (quoting Adkins v. United States, 68 F.3d 1317, 1322 (Fed. Cir. 1995))); Lippmann v. United States, 127 Fed. Cl. 238, 243 (2016). "It is equally settled that responsibility for determining who is fit

13

or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (footnotes omitted); see also Henrikson v. United States, 162 Fed. Cl. 594, 604–05 (2022) (quoting Heisig v. United States, 719 F.2d at 1156). The United States Court of Appeals for the Federal Circuit has recognized "there are 'thousands of [ ] routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with.'" Murphy v. United States, 993 F.2d 871, 873 (Fed. Cir. 1993) (alteration in original) (quoting Voge v. United States, 844 F.2d at 780); see also Bader v. United States, 160 Fed. Cl. at 543; Pittman v. United States, 135 Fed. Cl. 507, 538 (2017) ("Routine military personnel decisions are not justiciable, even if they are collateral consequences from other, challenged proceedings"); Antonellis v. United States, 106 Fed. Cl. 112, 115 (2012) (citation omitted), aff'd, 723 F.3d 1328 (Fed. Cir. 2013); Lowry v. United States, 153 Fed. Cl. 300, 315 (2021), recons. on other grounds, 2021 WL 4888874 (Fed. Cl. Oct. 19, 2021); Houghtling v. United States, 114 Fed. Cl. 149, 157 (2013); Strickland v. United States, 69 Fed. Cl. 684, 698 ("The United States Court of Appeals for the Federal Circuit repeatedly has emphasized the duty of the court, in cases concerning military personnel and benefits, to be mindful of the import of the doctrine of justiciability, i.e., whether the dispute is one within the competency of the court"), subsequent determination, 73 Fed. Cl. 631 (2006).

Justiciability depends on whether "'the duty asserted can be judicially identified and its breach judicially determined, and . . . protection for the right can be judicially molded.'" Adkins v. United States, 68 F.3d at 1322 (omission in original) (quoting Baker v. Carr, 369 U.S. 186, 198 (1962)); see also Murphy v. United States, 993 F.2d at 872; Volk v. United States, 111 Fed. Cl. 313, 324–25 (2013) ("The court agrees that Mr. Volk's suitability for further service as a Navy SEAL is a professional military decision and therefore nonjusticiable"). Accordingly, a "controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" Voge v. United States, 844 F.2d at 780 (quoting Greene v. McElroy, 254 F.2d 944, 953 (D.C. Cir. 1958), rev'd on other grounds, 360 U.S. 474 (1959)); see also Lippman v. United States, 127 Fed. Cl. at 243 (quoting Voge v. United States, 844 F.2d at 780) (finding that a claim was not justiciable because "[p]laintiff is effectively asking this court to second guess the sentence decided by the special court-martial members, something for which there are no 'tests or standards [it] can soundly administer within [its] special field of competence'" (alteration in original)); Miglionico v. United States, 108 Fed. Cl. 512, 520–21 (2012). Judicial review of military pay cases is appropriate when "the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure his conduct." Murphy v. United States, 993 F.2d at 873 (citing Sargisson v. United States, 913 F.2d 918, 922 (Fed. Cir. 1990); and Voge v. United States, 844 F.2d at 780)); Antonellis v. United States, 723 F.3d 1331 ("We have long recognized that the Military Pay Act 'provides for suit in [the Claims Court] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay.'" (alteration in original) (quoting Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004)).

The United States Court of Appeals for the Federal Circuit also has "consistently recognized that, although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." Adkins v. United States, 68 F.3d at 1323 (emphasis in original) (citing Murphy v. United States, 993 F.2d at 873; Dodson v. Dep't of Army, 988 F.2d 1199, 1207 n.7, reh'g denied (Fed. Cir. 1993); Sargisson v. United States, 913 F.2d at 921; Voge v. United States, 844 F.2d at 779; Koster v. United States, 231 Ct. Cl. 301, 685 F.2d 407, 412 (1982)). "When the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some." Murphy v. United States, 993 F.2d at 873 (citing United States v. Sargisson, 913 F.2d at 921); see also Jordan v. United States, 158 Fed. Cl. 440, 449 (2022); Meyer v. United States, 127 Fed. Cl. 372, 381 (2016); Houghtling v. United States, 114 Fed. Cl. at 157. In Murphy v. United States, the Federal Circuit stated:

> A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion. The court is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard.

Murphy v. United States, 993 F.2d at 873; see also Fisher v. United States, 402 F.3d 1167, 1177 (Fed. Cir. 2005) ("A court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion." (citation omitted)). As further indicated by the United States Court of Appeals for the Federal Circuit, "[w]hen the military promulgates procedural regulations and instructions and makes them the basis for a personnel action, that action is 'subject to judicial review for compliance with those regulations and instructions.'" Antonellis v. United States, 723 F.3d at 1332 (alteration added) (quoting Sargisson v. United States, 913 F.2d at 921).

As noted above, defendant argues, that "[t]he Court should dismiss Mr. Boyce's claim as nonjusticiable because he seeks to have this court retroactively promote him as a matter of equity." (alteration added). Plaintiff does not directly address the issue of justiciability in his filings with the court, including in his response to defendant's cross-motion for judgment on the Administrative Record, other than to generally assert that "[m]ilitary courts have no equitable jurisdiction and every remedy fashioned by them is a legal remedy." (alteration added). Plaintiff concludes summarily that he "may properly raise his legal entitlement to credit before this court because approving authorities shirked their legal obligation to credit him." For support, plaintiff cites to United States v. Pierce, 27 M.J. 367, 369 (C.M.A. 1989), a military criminal case which addresses how Article 15 "Commanding officer's non-judicial punishment" must be credited against a sentence that a service member receives as a result of a court-martial conviction, and which does not address justiciability in this court. Plaintiff also argues that he is entitled to automatic promotion pursuant to Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) (emphasis in original), and that the AFBCMR acted arbitrarily and capriciously when it denied plaintiff's claims for retroactive

promotion and the backpay which would flow from such promotion. In his complaint, plaintiff alleges,

> [t]he AFBCR [sic] concedes that, but for his reversed conviction, Plaintiff would have been eligible for promotion to E-4 on 26 February 2015 under provision of Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs*. Unlike promotion to subsequent ranks, which is discretionary in promotion boards, promotion to E-3 and then to E-4 is automatic, absent misconduct during the relevant rating period. Plaintiff's administrative record from the period in which he was confined indicates no misconduct. He is therefore due retroactive promotion because, but for his reversed conviction, his promotion to E-4 would have been automatic, based solely upon time in grade.

(alterations added; emphasis in original).

With certain exceptions not relevant to plaintiff's claims, the United States Court of Federal Claims is a court of law, not a court of equity. See United States v. Tohono O'Odham Nation, 563 U.S. 307, 313 (2011) (stating that the United States Court of Federal Claims "has no general power to provide equitable relief against the Government or its officers"); Massie v. United States, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("Except in strictly limited circumstances, see 28 U.S.C. § 1491(b)(2), there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief." (citing United States v. King, 395 U.S. 1, 4 (1969) and Placeway Constr. Corp. v. United States, 920 F.2d 903, 906 (Fed. Cir. 1990))). Accordingly, because this court is not able to grant the equitable relief as to the rank the plaintiff seeks, the court cannot order the AFBCMR, which does have equitable authority in this regard, to grant a retroactive promotion to plaintiff. See 10 U.S.C. § 1552(a)(1) (2018). As discussed above, however, this court can review and determine whether the Air Force violated its own applicable rules and whether it acted arbitrarily and capriciously when it denied plaintiff's application for retroactive promotion. See, e.g., Antonellis v. United States, 723 F.2d at 1332; Fisher v. United States, 402 F.3d at 1177; Murphy v. United States, 993 F.2d at 873.

In the case currently before the court, the parties do not appear to dispute the factual allegations underlying plaintiff's claims. As explained above, plaintiff argues that he is entitled to retroactive, automatic promotion and attendant backpay to E-3 and to E-4, because when his conviction was vacated he had accrued adequate time in service and time in grade to be eligible for such "automatic" promotion. Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) (emphasis in original), establishes the requirements for Air Force enlisted promotions and includes Table 1.1, which provides criteria that render an enlisted Airman ineligible for promotion. See generally Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs*, Table 1.1 (emphasis in original). Because Mr. Boyce raises issues as to whether the Air Force violated its own guidelines, including Air Force Instruction 36-2502, when it denied plaintiff increases in rank, the court finds plaintiff's challenge in this court is justiciable.

As indicated above, the parties also cross-moved for judgment on the Administrative Record in this court. Rule 52.1(c)(1) of the Rules of the United States Court of Federal Claims (2021) governs motions for judgment on the Administrative Record. The court's inquiry is directed to "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" Harmonia Holdings Grp., LLC v. United States, 20 F.4th 759, 766 (Fed. Cir. 2021) (quoting XOtech, LLC v. United States, 950 F.3d 1376, 1379 (Fed. Cir. 2020)); see also Henrikson v. United States, 162 Fed. Cl. at 607; Raj v. United States, 158 Fed. Cl. 569, 571 (2022); Valles-Prieto v. United States, 159 Fed. Cl. 611, 616 (2022) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006)); Superior Optical Labs, Inc. v. United States, 150 Fed. Cl. 681, 691 (2020) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356–57 (Fed. Cir. 2005)); AAR Manufacturing, Inc. v. United States, 149 Fed. Cl. 514, 522 (2020); Glocoms, Inc. v. United States, 149 Fed. Cl. 725, 731 (2020); Centerra Grp., LLC v. United States, 138 Fed. Cl. 407, 412 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1356–57); Informatics Applications Grp., Inc. v. United States, 132 Fed. Cl. 519, 524 (2017) (citation omitted); Strategic Bus. Sols., Inc. v. United States, 129 Fed. Cl. 621, 627 (2016), aff'd, 711 F. App'x 651 (Fed. Cir. 2018); Mgmt. & Training Corp. v. United States, 115 Fed. Cl. 26, 40 (2014) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126 at 131). The process is "designed to provide for trial on a paper record, allowing fact-finding by the trial court." Bannum, Inc. v. United States, 404 F.3d at 1356; see also Raj v. United States, 158 Fed. Cl. at 571; Vectrus Sys. Corp. v. United States, 154 Fed. Cl. 29, 40 (2021); Jordan Pond Col, LLC v. United States, 115 Fed. Cl. 623, 630 (2014).

In plaintiff's case, the court reviews the AFBCMR decision as to whether the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. See Chappell v. Wallace, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence"). The Court of Appeals for the Federal Circuit has written, "we will not disturb the decision of the Board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Prestonback v. United States, 965 F.3d 1363, 1368 (Fed. Cir. 2020) (citing Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing Haselrig v. United States, 333 F.3d 1354, 1355 (Fed. Cir. 2003))); see also Doyon v. United States, 58 F.4th 1235, 1424 (Fed. Cir. 2023) ("[A] court may only set aside the BCNR's [Board for Correction of Naval Records] decision if it was 'arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law'" (alterations added) (quoting Fisher v. United States, 402 F.3d at 1180)); Baude v. United States, 955 F.3d at 1298; Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010); Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir.) (citing Martinez v. United States, 333 F.3d 1305, 1314), reh'g en banc denied (Fed. Cir. 2006), cert. denied, 552 U.S. 810 (2007) (stating that this court reviews the AFBCMR decision "to determine whether it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law"); Metz v. United States, 466 F.3d 991, 998 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006); Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 528 U.S. 809 (1999); Heisig v. United States, 719 F.2d at 1156; Skinner v. United States, 219 Ct. Cl. 322, 332, 594 F.2d 824, 830 (1979); Henrikson v. United States, 162 Fed. Cl. at 607 ("As noted, the scope of review of the decision of a military correction board is a narrow and deferential one.

17

The Court is '"limited to determining whether a decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations."'" (quoting Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting Heisig v. United States, 719 F.2d at 1156))); Okuda v. United States, 160 Fed. Cl. 549, 559 (2022); Ward v. United States, 133 Fed. Cl. 418, 427 (2017); Joslyn v. United States, 110 Fed. Cl. 372, 389 (2013); Meidl v. United States, 108 Fed. Cl. 570, 575 (2013). This standard of review is narrow. The court does not sit as "a 'super correction board.'" King v. United States, 149 Fed. Cl. 272, 275 (2020) (citing Skinner v. United States, 219 Ct. Cl. at 331, 594 F.2d at 830). Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." Dodson v. United States, 988 F.2d at 1204.

As explained above, plaintiff held the grade of E-2 when he was convicted at a general court-martial for "rape on divers occasions and two specifications of assault consummated by a battery," and part of his sentence was "a reduction in grade to E-1." See United States v. Boyce, 76 M.J. at 244. Following the reversal of plaintiff's conviction, on June 12, 2017, plaintiff's DD Form 214 was corrected to reflect that his grade throughout confinement and at the time of his discharge should be considered E-2. Plaintiff, however, argues before this court that "[t]his court should consider Plaintiff [sic] reduction to E-2 as void because he was subsequently acquitted of the allegation for which an Article 15, UCMJ proceeding reduced him." (alterations added). Plaintiff argues that because he was ultimately acquitted of the assault for which he separately had received the October 14, 2011 Article 15 "Commanding officer's non-judicial punishment," which included a reduction in rank from E-3 to E-2, that the reduction in rank should be voided. Therefore, plaintiff argues he should be restored to the rank of E-3 for the time he spent in confinement and thereafter during his retrial. Plaintiff asserts that "[a]lthough an accused may face court-martial for an offense for which he previously faced non-judicial punishment, 'in these rare cases, an accused must be given *complete* credit for any and all nonjudicial punishment suffered: day-for-day, dollar-for-dollar, stripe-for stripe.'" Quoting United States v. Pierce, 27 M.J. 367, 369 (C.M.A. 1989) (emphasis in original; alteration added). Plaintiff further cites to the Manual for Courts-Martial, ¶ 1.f.(3) (2016) and to Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014), Table 1.1 (emphasis in original), alleging he was "ineligible for promotion solely by reason first of pre-trial investigation and subsequently, of his conviction." (emphasis added). Because "that conviction, and the non-judicial punishment stemming from the same incident, no longer exist," plaintiff argues that

> even if this court finds that Plaintiff is not due retroaction [sic] promotion, backpay and back allowances at the E-4 rate, it should find that his reduction to E-2 was ineffective in light of his acquittal of rehearing Charge II and its Specifications and should order backpay and allowances at the E-3 rate.

(capitalization in original; alteration added).

Defendant responds that plaintiff's argument "fails as he is incorrect that this Court should, or even could, deem his October 2011 Article 15 with vacated suspended rank

reduction to be null and void." Citing the Manual for Courts-Martial, Pt. V. ¶ 1 (2016), defendant argues that "Article 15 is a nonjudicial proceeding and a court-martial is judicial by design with each resulting in separate punishments based upon the result of the proceeding." Defendant argues that

> the reduction in rank accompanying the Article 15 that Mr. Boyce challenges was not the result of his set-aside court martial conviction and confinement. Thus, this nonjudicial punishment was not a right or privilege "that the accused has been deprived [sic] by virtue of the sentence in his former trial," and should not be impacted by this order.

(alterations added). Defendant continues:

> There is a reason Mr. Boyce finds no support for his argument that the outcome of a previously administered nonjudicial punishment rises and falls on a subsequent court martial. First, it is not a criminal judicial proceeding akin to a court-martial. See United States v. Reveles, 660 F.3d 1138, 1145–46 (9th Cir. 2011). Rather, Article 15 of the Uniform Code of Military Justice authorizes military commanders to punish subordinates without the formalities, rules, and rights of trial. See 10 U.S.C. § 815(b). An Article 15 is a less formalized method of discipline in the military, and it is conducted personally by the accused's commanding officer. See Dumas v. United States, [223 Ct. Cl. 465, 472–73,] 620 F.2d 247, 251 (Ct. Cl. 1980). Further, at the time of Mr. Boyce's Article 15s, no specific standard of proof applied to Article 15 proceedings, which left the punishment up to the discretion of the accused's commander. See id.; see also AFI [Air Force Instruction] 51-202, ¶ 3.4 (2003).

(alterations added). Moreover, citing Cochran v. United States, 1 Cl. Ct. 759, 765–66 (1983), defendant argues that

> [e]ven assuming arguendo that Mr. Boyce is attempting to appeal his October 2011 Article 15 before this Court, he has not alleged any failure of the Air Force to comply with proper procedure, which is the only aspect of review of a nonjudicial punishment that could fall with [sic] the purview of this Court's jurisdiction.

(alterations added).

Even if plaintiff were trying to challenge his October 14, 2011, Article 15 "Commanding Officer's non-judicial punishment" for sexual assault, this court is the improper forum to do so. Article 15 "Commanding officer's non-judicial punishment," by its very name and nature, is not a judicial proceeding. See Dumas v. United States, 223 Ct. Cl. at 472–73, 620 F.2d at 251. The statute at 10 U.S.C. § 815, which includes Article 15, UCMJ, provides that "any commanding officer may, in addition to or in lieu of admonition or reprimand," impose "disciplinary punishments for minor offenses without the intervention of a court-martial." 10 U.S.C. § 815(b). The same statute at 10 U.S.C. § 815(f) states:

The imposition and enforcement of disciplinary punishment under this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, and not properly punishable under this article; but the fact that a disciplinary punishment has been enforced may be shown by the accused upon trial, and when so shown shall be considered in determining the measure of punishment to be adjudged in the event of a finding of guilty.

Id. The Manual for Courts-Martial further explains that "Nonjudicial punishment provides commanders with an essential and prompt means of maintaining good order and discipline and also promotes positive behavior changes in Servicemembers without the stigma of a court-martial conviction." Manual for Courts-Martial, Part V, ¶ 1.c.

In Dumas v. United States, the United States Court of Claims explained the differences among the various methods by which the military disposes of cases of servicemember misconduct:

In the Uniform Code of Military Justice Congress has set forth four methods for disposing of cases involving offenses by servicemen: the general, special, and summary courts-martial and disciplinary punishment administered by the accused's commanding officer pursuant to Article 15, UCMJ, 10 U.S.C. § 815 (1976). The general and special courts-martial are essentially full judicial proceedings, presided over by lawyer judges with counsel for both the prosecution and defense. General courts-martial are authorized to award any lawful sentence, including death. Article 18, UCMJ, 10 U.S.C. § 818 (1976). The range of punishments available under a proceeding becomes more restricted and comparatively milder as procedures become less formally judicial in nature. For example, while a summary court-martial is a proceeding conducted by a single commissioned officer, the punishments which may be imposed are specifically restricted to penalties such as one month's confinement or reduction in grade. Article 20, UCMJ, 10 U.S.C. § 820 (1976).

Article 15 nonjudicial punishment, UCMJ, 10 U.S.C. § 815 (1976), is the least formalized method of discipline, conducted personally by the accused's commanding officer. The legislative history accompanying 10 U.S.C. § 815 states "Article 15 . . . provides a means whereby military commanders" may impose nonjudicial punishment for minor infractions of discipline." Its utilization permits the services "to reduce substantially the number of courts-martial for minor offenses, which result in stigmatizing and impairing the efficiency and morale of the person concerned." S. Rep. No. 1911, 87th Cong., 2d Sess. 2-4, reprinted in (1962) U.S. Code Cong. & Admin. News, pp. 2379, 2380-82. The legislative history states definitely that Article 15 nonjudicial punishment is noncriminal in character and "in this sense has no connection with the military court-martial system." Id.

Under Article 15 the accused is given specific notice of the offense charged and asked to elect for either nonjudicial punishment by his commanding officer or demand trial by court-martial. Election of nonjudicial punishment

constitutes a waiver of the right to demand trial. Manual for Courts-Martial, (hereinafter MCM), P 133 (rev. ed. 1969). But failure to demand trial by court-martial, however, "is not a plea of guilty to the described offense(s). Accordingly, commanders must carefully consider all matters submitted in defense." Air Force Regulation (AFR) 111-9(6)(h) (July 24, 1974).

If nonjudicial punishment is elected the accused is given a reasonable time for preparation and then appears before his commanding officer to offer matters in defense or mitigation of the offense charged. The accused may call witnesses who are reasonably available locally and who can be presented without legal process. AFR 111-9(6)(e). There is no requirement at the accused's appearance for the commander to present evidence to establish the commission of the offense or offenses. Id. No formal evidentiary standards apply to Article 15 proceedings, however, under Air Force regulations, "punishment should be imposed only when the commander is convinced by reliable evidence that the offender committed the offense." AFR 111-9(4)(a).

If, after the accused's presentation, the commander is convinced the offender committed the offense, nonjudicial punishment may be imposed. The punishments a commanding officer can award are strictly limited and significantly milder than those authorized under courts-martial. The authorized punishments vary somewhat according to the rank of the commanding officer and rank of the accused, but the maximum punishments are: 30 days' correctional custody; 60 days' restriction to specified limits; 45 days' extra duties; forfeiture of one-half of one month's pay per month for two months; detention of one-half of one month's pay per month for three months; reduction in grade. Article 15, UCMJ, 10 U.S.C. § 815; MCM [Manual for Courts-Martial] P 131; AFR [Air Force Regulation] 111-9. The accused has specific rights of appeal of which he must be notified.

Dumas v. United States, 223 Ct. Cl. at 472–74, 620 F.2d at 251–52 (omission in original; alterations added); see also Reid v. United States, 159 Fed. Cl. 619, 630 (2022) ("'The fundamental character of . . . nonjudicial proceeding . . . is that it is not a trial by court-martial'" (quoting Dumas v. United States, 223 Ct. Cl. at 471, 620 F.2d at 250) (omissions in original)).

Defendant also argues that plaintiff's reliance on United States v. Pierce, 27 M.J. 367, is misplaced. Defendant argues that plaintiff misreads and inappropriately expands the holding in United States v. Pierce to mean that a court-martial conviction that has been set aside also must void or nullify Article 15 "Commanding officer's non-judicial punishment" for the same conduct. Instead, defendant argues that United States v. Pierce only supports "the proposition that a service member who has been nonjudicially punished for a serious offense, and is later court-martialed for that same offense, may be given full credit for any nonjudicial punishment."

In <u>United States v. Pierce</u>, the United States Court of Military Appeals indicated:

It is clear from the language of this provision that Congress did not intend for imposition of nonjudicial punishment to preclude the subsequent court-martial of a servicemember accused of a serious offense. <u>See</u> <u>also</u> RCM 907(b)(2)(D)(iv), Manual for Courts-Martial, United States, 1984. Article 44, UCMJ, 10 U.S.C. § 844 (Former jeopardy), does not, by its terms, apply to nonjudicial punishments. <u>See</u> <u>United States v. Fretwell</u>, 11 USCMA 377, 29 CMR 193 (1960). Likewise, Article 13 (Punishment prohibited before trial) is inapplicable as appellant was not punished "while [he was] being held for trial." Absent some sinister design, evil motive, bad faith, etc., on the part of military authorities, it is not a violation of military due process to court-martial a servicemember for a serious offense, even though he has already been punished nonjudicially. That, however, is *all* Article 15(f) implies.

It does not follow that a servicemember can be twice *punished* for the same offense or that the *fact* of a prior nonjudicial punishment can be exploited by the prosecution at a court-martial for the same conduct. Either consequence would violate the most obvious, fundamental notions of due process of law. Thus, in these rare cases, an accused must be given *complete* credit for any and all nonjudicial punishment suffered: day-for-day, dollar-for-dollar, stripe-for-stripe. Furthermore, the nonjudicial punishment may not be used for *any* purpose at trial, such as impeachment (even of an accused who asserts he had no prior misconduct); to show that an accused has a bad service record; or any other evidentiary purpose, <u>e.g.</u>, Mil. R. Evid. 404(b), Manual, <u>supra</u>. Under these circumstances, the nonjudicial punishment simply has no legal relevance to the court-martial.

<u>United States v. Pierce</u>, 27 M.J. at 368–69 (emphasis and alteration in original; footnote omitted). In <u>United States v. Pierce</u>, the United States Court of Military Appeals held that, in cases in which an accused receives both Article 15 "Commanding officer's non-judicial punishment" and is convicted by court-martial, the nonjudicial punishment must be credited against any sentence received by the accused at the court-martial. <u>See</u> <u>United States v. Pierce</u>, 27 M.J. at 369.

In the above captioned case, plaintiff, citing to <u>United States v. Pierce</u>, attempts to argue that, because non-judicial punishment must be credited against a court-martial sentence, that a court-martial acquittal should erase Article 15 "Commanding officer's non-judicial punishment" for the same underlying conduct. <u>United States v. Pierce</u>, however, does not state that Article 15 "Commanding officer's non-judicial punishment" must be invalidated if the servicemember is subsequently acquitted by court-martial for the same conduct. <u>See</u> <u>United States v. Pierce</u>, 27 M.J. at 369. Instead, as quoted above, <u>United States v. Pierce</u> only stands for the proposition that if an accused is found guilty of conduct for which he or she has already received Article 15 "Commanding officer's non-judicial punishment," that "an accused must be given *complete* credit for any and all nonjudicial punishment suffered" at the sentencing phase of the court-martial. <u>See</u> <u>United</u>

States v. Pierce, 27 M.J. at 369 (emphasis in original). Accordingly, plaintiff's Article 15 "Commanding officer's non-judicial punishment" for the assault was only relevant when he was sentenced as a result of his court-martial conviction. See United States v. Pierce, 27 M.J. at 369. During sentencing, plaintiff's court-martial, therefore, was required to consider plaintiff's previous Article 15 "Commanding officer's non-judicial punishment" for the same assault, which included a reprimand from his commanding officer and a reduction in grade from E-3 to E-2. In addition, even if the October 14, 2011 Article 15 "Commanding Officer's non-judicial punishment" was considered "void," as requested by plaintiff, plaintiff would have been ineligible for promotion at the time for reasons unrelated to the October 14, 2011 Article 15 "Commanding officer's non-judicial punishment." Plaintiff does not dispute certain instances of misconduct, which plaintiff's supervisor cited in the "Selective Reenlistment Program Consideration" form, which could have independently formed a basis for his supervisor's recommendation that plaintiff not be selected for reenlistment, including plaintiff's December 17, 2012 Article 15 "Commanding Officer's non-judicial punishment" for dereliction of duty, the April 2012 "Letter of Reprimand" for "failure to follow technical data during a maintenance task," his August 21, 2012 referral EPR, and his March 14, 2014 referral EPR, all of which rendered plaintiff ineligible for promotion.

Moreover, this court is not the proper forum for a plaintiff to challenge the merits of an Article 15 "Commanding Officer's non-judicial punishment." See Dumas v. United States, 223 Ct. Cl. at 470, 620 F.2d at 250. In Jefferson v. United States, a Judge of this court stated that "the scope of review of this court 'is not [this court's function] to review the merits of findings of guilt in Article 15 punishment proceedings.'" Jefferson v. United States, 60 Fed. Cl. 433, 438 (2004) (alteration in Jefferson v. United States) (quoting Cochran v. United States, 1 Cl. Ct. at 770). Plaintiff's argument that the reduction in rank to E-2 should be void as a result of the court-martial conviction being vacated is not persuasive because the non-judicial punishment pursuant to Article 15, UCMJ, ordered by plaintiff's commander, was independent of plaintiff's subsequently vacated court-martial conviction. See Dumas v. United States, 223 Ct. Cl. at 473, 620 F.2d at 251–52; see also Manual for Courts-Martial, Pt. V (indicating the multiple differences between Article 15 "Commanding Officer's non-judicial punishment" and a court-martial proceeding). Because plaintiff's October 14, 2011 Article 15 was not voided as a result of, or following his acquittal, plaintiff's non-judicial punishment, which included a reduction in rank from E-3 to E-2, the reduction in rank to E-2 was not improper. Furthermore, plaintiff does not challenge the validity of the Article 15 "Commanding Officer's non-judicial punishment[s]," (alteration added), as determined by plaintiff's commanding officer. The AFBCMR did not act arbitrarily and capriciously when it concluded that plaintiff's appropriate rank was E-2 throughout his confinement and during his retrial. See Jefferson v. United States, 60 Fed. Cl. at 444.

As quoted above, with respect to plaintiff's allegation of entitlement to a promotion to E-4, in his motion for judgment on the Administrative Record, plaintiff argues:

The AFBCMR concedes that, but for his reversed conviction, Plaintiff would have been eligible for promotion to E-4 on 26 February 2015 under provision of Air Force Instruction 36-2502, *Enlisted Airman*

> *Promotion/Demotion Programs.* Unlike promotion to subsequent ranks, which is discretionary in promotion boards, promotion to E-3 and then to E-4 is automatic, absent misconduct during the relevant rating period. Plaintiff's administrative record from the period in which he was confined indicates no misconduct.

(emphasis in original). Plaintiff, citing Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs*, Table 1.3 (emphasis in original), argues:

> An A1C [Airman First Class] is promoted to E-4 when he has the recommendation of his commander, has completed 36 months' time in service and 20 months' TIG **or** automatically when he completes 28 months' TIG, irrespective of any recommendation. AFI 36-3502, para 2.2. It is not possible to remain an E-3 for three years if eligible for promotion. AFI 36-2502, para. 4.2.4.1. Although an immediate commander may withhold an A1C's promotion by nonrecommending him, he must do so in writing and may only do so in monthly increments for up to six months. AFI 36-2502, paras 4.2 and 4.2.4.4.

(alteration added; emphasis in original).

Defendant argues, however, that "[t]he AFBCMR did not act arbitrarily in denying Mr. Boyce a retroactive promotion, as he neither had legal entitlement to any rank beyond Airman (E-2) nor was the board [AFBCMR] obligated to exercise its equitable powers to afford him the retroactive promotion he seeks." (alterations added). Defendant states:

> The advisory opinion requested by the AFBMCR [sic] detailed the reasons why Mr. Boyce was not entitled to promotion to any rank beyond Airman (E-2), the rank at which he was discharged. In short, the advisory opinion noted that Mr. Boyce had Article 15s and referral EPRs that rendered him ineligible for promotion, in addition to other issues that might have rendered him ineligible in accord with Table 1.1 in Air Force Instruction 36-2502 (2014 version).

> Even if Mr. Boyce was eligible for promotion despite his Article 15s and referral EPRs, the advisory opinion explained that the earliest date upon which he would be eligible for promotion to Airman First Class (E-3) would have been June 26, 2013, which meant that February 26, 2015, would have been the earliest date upon [sic] for his eligibility to Senior Airman (E-4), "provided he had no ineligibility factors and was recommended by his commander." But this means that Mr. Boyce would not have been eligible for promotion to Airman First Class (E-3) until after his unit commander has already decided that he would not be reenlisted, an action that ultimately rendered him ineligible for any promotion. Thus, Mr. Boyce cannot show that he had any legal entitlement to a promotion beyond the rank he held at his discharge, Airman First Class (E-2).

(alterations added; internal references omitted).

Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) (emphasis in original), provides the policies, requirements, and eligibility criteria for Air Force enlisted promotions. See Air Force Instruction 36-2502. Further, Air Force Instruction 36-2502, Ch. 1 ¶ 1.4.1 provides that the Military Personnel Section "[e]nsures that all Airmen meet eligibility requirements and commander recommends promotion in writing." (alteration added). With regard to the determination of promotion ineligibility, Air Force Instruction 36-2502 states: "When individuals are rendered ineligible for promotion, they cannot test, cannot be considered if already tested, and projected promotion will be canceled." Air Force Instruction 36-2502, Ch. 1 ¶ 1.8. Air Force Instruction 36-2502, Table 1.1, Row D, Block 8 also establishes that an Airman is ineligible for promotion if he or she "is not recommended for promotion consideration, or the promotion authority removes the individual from a select list." In addition, Air Force Instruction 36-2502, Table 1.1, Row D, Block 15 states that an Airman is ineligible for promotion if he or she "is denied or not selected for reenlistment by commander." An Airman is also ineligible for promotion if he or she "has a referral report." Air Force Instruction 36-2502, Table 1.1, Row D, Block 21.

With respect to plaintiff's argument that "[a]n A1C [E-3] is promoted to E-4 when he has the recommendation of his commander, has completed 36 months' time in service and 20 months' TIG [time in grade] **or** automatically when he completes 28 months' TIG, irrespective of any recommendation," (alterations added; emphasis in original), which relies on Air Force Instruction 36-2502, Ch. 2 ¶ 2.2 (Dec. 12, 2014), plaintiff takes a portion of the Instruction out of context. Air Force Instruction 36-2502, Ch. 2 ¶ 2.2 provides in full:

> **2.2. SrA [Senior Airmen (E-3)] Promotions (see Table 1.3):**
>
> > 2.2.1. Airmen (fully qualified) are promoted to SrA upon meeting minimum requirements in **Table 2.1**, when recommended by the promotion authority in writing, and have completed 36 months TIS [time in service] and 20 months TIG [time in grade] or 28 months TIG (whichever occurs first).
> >
> > > 2.2.1.1. In situations where an RegAF [Regular Air Force] Airman is unable to obtain their 3-skill level before the projected promotion date and training delay was due to no fault of the Airman, the Unit Commander must ensure retroactive promotion is requested through the MPS [Military Personnel Section] upon the Airmen obtaining their 3-skill level. **(T-3).**

Air Force Instruction 36-2502, Ch. 2 ¶ 2.2 (alterations added and emphasis in original). Table 2.1, referenced in Air Force Instruction 26-2502, Ch. 2, ¶ 2.2.1 (Dec. 12, 2014), provides:

> The Airman is eligible for promotion if recommended in writing, by the promotion authority. He or she must serve on AD [active duty] in enlisted status as of the PECD [Promotion Eligibility Cut-off Date], serving continuous AD until the effective date of promotion, and is not in a condition

> listed under Table 1.1 on or after the PECD. The individual must be in PES
> [promotion eligibility status] code X on effective date of promotion.

Air Force Instruction 36-2502, Table 2.1 (alterations added). Air Force Instruction 36-2502 provides that an "Airman is <u>eligible</u>" for promotion, not that an Airman is automatically entitled to promotion upon meeting the minimum time in service or time in grade requirements. <u>See id.</u> (emphasis added). Moreover, Air Force Instruction 36-2502 also requires an Airman to be "recommended in writing" and "not in a condition listed under Table 1.1," which provides the ineligibility criteria that preclude an Airman from promotion during a given promotion cycle. <u>See id.</u> at Table 1.1. While time in service and time in grade are necessary requirements for promotion eligibility, time in service and time in grade alone are insufficient for promotion. There are additional requirements for promotion beyond time in service or grade, as well as conditions which can result in non-selection for promotion.

Airmen are promoted according to policies which are designed to meet military mission requirements and to develop institutional and occupational competencies. <u>See</u> Dep't of the Air Force Policy Directive 36-25 ¶ 2 (Dec. 15, 2022); <u>see also</u> Air Force Handbook 36-2618, Ch. 1 ¶ 1.2.1 (Nov. 1, 2021). The Department of the Air Force Policy Directive 36-25 states:

> 2.1. The Department of the Air Force will appoint as military officers those qualified individuals, enlisted members, and officers who possess the skills necessary to meet the needs of the Department of the Air Force and clearly have demonstrated the potential for full military careers.

> 2.2. The Department of the Air Force promotion system will provide promotion opportunities to advance Airmen and Guardians with the appropriate experience and skills to fill projected requirements, consistent with federal law and Department of Defense policies and procedures.

> 2.3. Airmen and Guardians will be assessed for promotion based on their potential to serve in the next higher grade. Selections will be made using the fully qualified or best qualified concept, which values duty performance and potential based on that performance, but not to the exclusion of other factors. Airmen and Guardians who are not qualified for advancement to the next higher grade will not be promoted. When appropriate, and as permitted by law and consistent with Department of Defense policy, Airmen and Guardians will be demoted to a grade commensurate with their demonstrated abilities and skills.

> 2.4. The Department of the Air Force will implement an enlisted personnel management plan that develops professionally trained Airmen and Guardians to satisfy force structure authorizations consistent with Department of Defense guidance.

Dep't of the Air Force Policy Directive 36-25 ¶ 2. Because the Department of the Air Force Policy Directive 36-25 and Air Force Instruction 36-2502 are designed to ensure that service members are promoted based on time in grade and service and also on merit in

order to guarantee mission success, automatic promotions are not a part of this system. Plaintiff's reading of Air Force Instruction 36-2502 as requiring automatic promotion once an Airman has met the time in service or time in grade is incorrect.

As discussed above, plaintiff also tries to rely on the September 13, 2019 advisory opinion submitted to the AFBCMR by the Air Force Personnel Center/Enlisted Promotions. Plaintiff argues that because the September 13, 2019 advisory opinion by the Air Force Personnel Center/Enlisted Promotions indicated he "would have been eligible for promotion to E-4 on 26 February 2015 under provision of Air Force Instruction 36-2502," and that "promotion to E-3 and then to E-4 is automatic," he is entitled to an "automatic" promotion to E-4. The September 13, 2019 advisory opinion indicated:

> Based on the applicant's Article 15 punishments and referral EPRs, he was ineligible for promotion to SrA [Senior Airman] until 26 Jun 13 – provided the 14 Mar 14 referral EPR is removed, as the basis for the referral was the court-martial conviction. The applicant would have then been eligible for promotion on 26 Feb 15 (36 months TIS [time in service] and 20 months TIG [time in grade]), provided he had no ineligibility factors and was recommended by his commander.

(alterations added). As further indicated in the AFBCMR's decision, the advisory opinion also provided the following "Proposed Directive Language:" "<u>Should the Board choose</u> to provide further relief regarding the applicant's rank, we recommend blocks 4a, 4b, and 12i be corrected to reflect SrA, E4, and 2015 Feb 26, respectively." (emphasis added). Defendant suggests that the last sentence in the advisory opinion, quoted immediately above, was included pursuant to Air Force Instruction 36-2603 ¶ 4.2.2.3,[16] which requires an advisory opinion, regardless of the recommendation provided, to include specific guidance on corrective action that could be taken in the event that the AFBCMR decides to grant such relief. According to defendant, "[t]his statement was not a recommendation of relief that the board should provide. Ultimately, the board declined to afford Mr. Boyce this equitable relief after concluding that Mr. Boyce was not entitled to the promotion he sought." (alteration added).

Just as plaintiff took a portion of Air Force Instruction 36-2502 out of context, plaintiff takes a portion of the AFBCMR decision and the September 13, 2019 advisory opinion from the Air Force Personnel Center/Enlisted Promotions out of context. First, the AFBCMR stated that "the applicant would have been <u>eligible</u> for promotion to senior airman (E-4) on 26 February 2015." (emphasis added). The AFBCMR decision did not

---

[16] Air Force Instruction 36-2603, *Air Force Board for Correction of Military Records*, ¶ 4.2.2.3 (Sept. 18, 2017), provides in full:

> Regardless of the recommendation provided (e.g., grant or deny), the advisory opinion shall include instructions on specific corrective action to be taken <u>if</u> the Board recommends relief be granted.

Air Force Instruction 36-2603, *Air Force Board for Correction of Military Records*, ¶ 4.2.2.3 (Sept. 18, 2017) (emphasis added).

state that plaintiff was entitled to promotion on February 26, 2015. Plaintiff also improperly relies on a single sentence from the September 13, 2019 advisory opinion provided by the Air Force Personnel Center/Enlisted Promotions, which included directions for how to correct the DD Form 214 "should" the AFBCMR choose to provide "further relief." Moreover, while the AFBCMR may request and review advisory opinions from various entities within the military, an advisory opinion, by its very name and title, is exactly that: "advisory." Members of the AFBCMR must use their own, independent judgment to determine whether a service member is entitled to the relief he or she requests and members of the AFBCMR cannot rely entirely on an advisory opinion such as the September 13, 2019 advisory opinion from the Air Force Personnel Center/Enlisted Promotions, to reach the AFBCMR decision. In addition, the advisory opinion from the Air Force Personnel Center/Enlisted Promotions on which plaintiff tries to rely explicitly states, "[t]he applicant would have been eligible for promotion on 26 Feb 15 (36 months TIS [time in service] and 20 months TIG [time in grade]), provided he had no ineligibility factors and was recommended by his commander. (alterations added). Plaintiff was not recommended in writing by his commander and, indeed, was not selected for reenlistment on February 23, 2013. Plaintiff's argument that he was "due retroactive promotion because, but for his reversed conviction, his promotion to E-4 would have been automatic, based solely upon time in grade," fails because there is no statute, regulation, or Air Force Instruction that requires automatic promotion for Airmen once they have reached the minimum qualifications of time in grade or time in service. As discussed above, minimum time in service or time in grade, while required, are insufficient to establish eligibility for promotion. Because plaintiff cannot provide a source of law that requires "automatic promotion," plaintiff's argument fails. In addition, as quoted above, the conclusion of the September 13, 2019 advisory opinion from the Air Force Personnel Center/Enlisted Promotions stated:

> Based on the documentation provided by the applicant and analysis of the facts, there **IS NO** evidence of an error or injustice as applicant was never eligible for promotion consideration to either TSgt [technical sergeant] or SSgt [staff sergeant]. Furthermore, Air Force policy does not allow for an automatic promotion as the applicant requests/suggests.

(alterations added; emphasis and capitalization in original). Absent "evidence of an error or injustice," the AFBCMR was not required to exercise its equitable authority to grant plaintiff a retroactive promotion. This court's jurisdiction does not include ordering the AFBCMR to use its equitable authority to grant plaintiff retroactive promotion, especially when plaintiff did not meet the eligibility criteria required for promotion by Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014).

Unlike, for example, the exception for recipients of the Medal of Honor, there generally is no automatic promotion in the Air Force for enlisted personnel. See Air Force Instruction 36-2502, Ch. 7 ¶ 7.2 (stating that the Air Force "automatically promotes Medal of Honor recipients one grade unless they currently serve in the grade of CMSgt [Chief Master Sergeant]" (alteration added)).[17] Rather, enlisted service members become

---

[17] There is also no statute that provides for automatic promotion for officers because "Congress cannot provide for automatic appointments," because "the Constitution

"eligible" for promotion to subsequent ranks, but that does not equate to an entitlement to automatic promotion. See generally Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014). The United States Court of Appeals for the Federal Circuit recently stated that while promotions may be "fairly routine," they are by no means "automatic." See Pinto v. United States, No. 2022-2093, 2023 WL 2132811, at *3 (Fed. Cir. Feb. 21, 2023). If promotions were automatic, "'it would be nonsensical for the regulations to grant senior officers the authority to approve or deny such a promotion.'" Id. (quoting Pinto v. United States, No. 19-1791C, 2022 WL 1764682, at *6 (Fed. Cl. May 31, 2022)). Plaintiff's argument that promotion to E-3 or to E-4 is automatic is inconsistent with the requirements that promotions to those ranks be recommended in writing by the appropriate promotion authority. See Air Force Instruction 36-2502, Ch. 2, ¶¶ 2.1, 2.2.

Enlisted servicemembers serve for a limited or defined period of time known as an enlistment. See 10 U.S.C. § 505 (2018). In addition, the statute at 10 U.S.C. § 508 provides that

> [n]o person whose service during his last term of enlistment was not honest and faithful may be reenlisted in an armed force. However, the Secretary concerned may authorize the reenlistment in the armed force under his jurisdiction of such a person if his conduct after that service has been good.

Id. § 508 (alteration added). Unless an individual can point to a specific statutory or regulatory right to be reenlisted, an individual is not entitled to be reenlisted in the military. See Dodson v. United States, 988 F.2d at 1203–04 (noting that "no one has a right to enlist or reenlist in the armed forces, unless specially given one by statute or regulation"); see also Baude v. United States, 955 F.3d 1290, 1314 (Fed. Cir. 2020) (Wallach, J., dissenting) ("There is no right to remain in the military[.]" (alteration added)); Maier v. Orr, 754 F.2d 973, 980 (Fed. Cir. 1985) ("No one has an individual right, constitutional or otherwise, to enlist in the armed forces, the composition of those forces being within the purview of the Congress and the military."); Thompson v. United States, 221 Ct. Cl. 983, 983 (1979) ("[W]e have no jurisdiction over claims for refusal of reenlistment absent some special provision of law giving a right to reenlist. Plaintiff has not cited any such special provision. Thus, the petition must be dismissed for lack of jurisdiction."); Harper v. United States, 104 Fed. Cl. 287, 293 (2012) (dismissing plaintiff's request for reinstatement in the Marine Corps in a case in which plaintiff's term of enlistment had expired and plaintiff had not alleged any statutory or regulatory right to reenlistment); Hwang v. United States, 94 Fed. Cl. 259, 271 (2010) ("[N]o serviceperson has a right to enlist or to reenlist in the armed forces unless specially granted one." (internal quotation marks omitted)), aff'd, 409 F. App'x 348 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2011); Flowers v. United States, 80 Fed. Cl. 201, 217 (2008) ("Unless a statute or regulation confers upon a serviceperson the right to reenlist, 'an enlisted man has no right to reenlist when his previous enlistment period ends . . . .'" (omission in

---

expressly states that only the President has the authority to appoint an officer, and thus to take the final step in the promotion process." Lewis v. United States, 458 F.3d 1372, 1377 (Fed. Cir. 2006); see also Tippett v. United States, 98 Fed. Cl. 171, 182 (2011) ("Mr. Tippett's promotion claim fails as a matter of law because he has no legal entitlement to the promotions he seeks, either in the statutes he cites or in any other source of law known to the court" (citing Smith v. Sec'y of Army, 384 F.3d 1288, 1295 (Fed. Cir. 2004))).

original) (quoting <u>McEniry v. United States</u>, 7 Cl. Ct. 622, 626 (1985))); <u>Thomas v. United States</u>, 42 Fed. Cl. 449, 453 (1998) ("No one has a right to enlist or re-enlist in the armed forces unless specially granted such a right by statute or regulation."), <u>aff'd</u>, 217 F.3d 854 (Fed. Cir. 1999).

As indicated above, plaintiff's original term of enlistment expired on February 27, 2017, which was mere days after he was released from confinement. Accordingly, his Military Personnel Flight extended his term of enlistment until March 8, 2017, pursuant to 10 U.S.C. § 509 (2012), to allow him sufficient time to out-process from the Air Force. Pursuant 10 U.S.C. § 505, at the expiration of his term of enlistment, he was automatically discharged from the Air Force and issued a DD Form 214. After the United States Court of Appeals for the Armed Forces vacated his conviction, plaintiff was recalled to active duty for his court-martial retrial. Plaintiff does not argue that he is entitled to reenlistment, nor does he allege that the Air Force did not follow the correct procedures during plaintiff's out-processing, other than asserting that he is due backpay at the higher grade of E-2 for his court-martial retrial, which is discussed below. Just as plaintiff has not demonstrated that he is entitled to "automatic" promotion to E-3 or to E-4 because he spent the minimum time in service for both grades, he also has not alleged or established that he is entitled to reenlistment in the Air Force, or that the Air Force did not follow the relevant statutes and regulations when it discharged plaintiff from military service.

Another argument offered by plaintiff is that there was no "nonrecommendation letter" in his files for the time he spent in confinement, and, therefore, that he was due automatic promotion. According to plaintiff,

[i]t is not possible to remain an E-3 for three years if eligible for promotion. AFI 36-2502, para. 4.2.4.1. Although an immediate commander may withhold an A1C's promotion by nonrecommending him, he must do so in writing and may only do so in monthly increments for up to six months. AFI 36-2502, paras 4.2 and 4.2.4.4.

(alteration added). Also according to plaintiff,

[t]his court should find that the lack of a non-recommendation letter and the lack of documentation which would justify a non-recommendation letter prove that Plaintiff would have been automatically promoted to E-4, absent his now set-aside conviction. This court should therefore grant to him back pay and back allowances at the E-4 Rate.

(alteration added). According to plaintiff: "Even if Plaintiff's promotion were not automatic and required his commander's active assent (which it did not), there would be no grounds for his commander not to do so," because plaintiff's files "contain no documentation of any misconduct during Plaintiff's term of confinement." Plaintiff further argues that he

was eligible for automatic promotion, but for his conviction. Plaintiff's commanders apparently relied on Plaintiff's conviction to block his otherwise automatic promotion and did not issue a nonrecommendation letter, even though that option was open to them. AFI 36-2502, para 4.2.2.1. Plaintiff is due retroactive promotion because the condition blocking his promotion no longer exists. <u>Id.</u> at para 1.14.

Defendant responds that plaintiff's argument regarding a nonrecommendation letter or entitlement to an automatic promotion "lacks merit as the record is replete with evidence justifying his commander never issuing a written promotion recommendation."

Plaintiff's reliance on Air Force Instruction 36-2502 with respect to the lack of a "nonrecommendation letter" is also misplaced because nonrecommendation letters are issued only "after promotion" and, as discussed above, plaintiff was never selected for promotion to E-3. Air Force Instruction 36-2502, Ch. 4, ¶ 4.2.4 provides in pertinent part:

4.2.4. **Withholding Promotion**. Commanders must be advised withholding a promotion is not used as a punishment or inducement for an Airman to conform to acceptable standards of performance. Withholding action is taken after promotion selection but before the effective date of promotion. For withholding promotions:

4.2.4.1. The promotion of any Airman is withheld when he or she possesses any of the conditions listed in **Table 1.2.**[18] Written

---

18 Air Force Instruction 36-2502, Table 1.2 (Dec. 12, 2014) provides:

| ITEM | Withhold an Airman's promotion when his or her name is not removed from a select or eligibility list and the Airman is |
|------|------------------------------------------------------------------------------------------------------------------------|
| 1 | awaiting a decision on an application as a conscientious objector (AFI 36-3204, *Procedures for Applying as a Conscientious Objector*). PES code S. |
| 2 | placed in the Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program. PES code E. (See notes 1 & 2). |
| 3 | Commanders will withhold an individual's projected promotion following a failed a [sic] fitness assessment after the promotion eligibility cutoff date (PECD), or after having been selected for promotion (line number) |
| 4 | under military/civil court charges. PES code D. (see note 3). |
| 5 | under investigation (military/civil.) PES code B (see note 3). |
| 6 | pending data verification and the record is not available. Grade Status Reason code 2D, 2M or 2P. |
| 7 | missing source document and the AFPC cannot verify one or more promotion factors. GSR code 2P. |
| 8 | under other reasons the commander requests with prior approval from the individual's wing commander. (Do not use reasons of substandard behavior or performance, problems with OJT, misbehavior, etc.) GSR code 2N. |

commander notifications are required for all conditions listed in **Table 1.2.** Commanders will clearly state specific reasons for all withholding actions. MPS will return memorandums not stating the specific reasons for withholding actions to commanders and reference this paragraph.

Air Force Instruction 36-2502, ¶ 4.2.4 (second emphasis added; footnote added). The section of Air Force Instruction 36-2502, which addresses withholding promotions, applies to Airman "after promotion selection," when "his or her name is not removed from a select or eligibility list and the Airman" meets one of the criteria on a list conditions, see id., meaning that once an Airman is selected for promotion, his or her commander can choose to withhold such promotion based on one of the factors listed in Air Force Instruction 36-2502, Table 1.2. Air Force Instruction 36-2502, ¶ 4.2.4 does not apply to plaintiff's case because plaintiff was never selected for promotion. As discussed above, plaintiff has not provided any statute, regulation, Air Force Instruction, or other source of law that requires the Air Force to automatically promote Airmen based solely on time in service or time in grade. Because Air Force Instruction 36-2502, Ch. 2 ¶ 2.2 states that an Airman is only eligible for promotion to E-3 "upon meeting minimum requirements in Table 2.1, when recommended by the promotion authority in writing, and have [sic] completed 36 months TIS [time in service] and 20 months TIG [time in grade] or 28 months TIG (whichever occurs first)," plaintiff did not qualify for promotion to E-3. Id. (alterations added). Plaintiff did not have a written recommendation for promotion by a promotion authority and, therefore, was not eligible for promotion to E-3 while he was confined. Because plaintiff was never selected for promotion to E-3, plaintiff's commander could not issue a nonrecommendation letter, which is issued only after selection for promotion. Plaintiff's argument that his "commanders apparently relied on Plaintiff's conviction to block his

| | |
|---|---|
| 9 | selected for promotion to MSgt/SMSgt and identified as having 18 or more years TAFMS on the promotion effective date and does not have 2 years retainability the day before the promotion effective date; selected for promotion to CMSgt (regardless of TAFMS) and does not have 3 years retainability before the promotion effective date. GSR code 2K. |
| 10 | serving in the grade of SrA, selected for promotion to SSgt, and has not completed resident Airman Leadership School; serving in the grade of SSgt/TSgt, the projected promotion will be placed into withhold, if the 12-month EPMPE enrollment expires before the promotion sequence number (PSN) consummates. The PSN will be removed if EPMPE is not completed by the end of the promotion cycle (see note 4). GSR code 2T. |
| 11 | serving in the grade of SrA through SMSgt and does not meet skill level requirements as listed in Table 2.1. by the effective date of promotion. GSR 2N. |

Air Force Instruction 36-2502, Table 1.2 (Dec. 12, 2014) (capitalization and emphasis in original; alteration added).

otherwise automatic promotion and did not issue a nonrecommendation letter, even though that option was open to them," and that absent such nonrecommendation letter he is "due retroactive promotion" does not persuade the court.

In sum, plaintiff has not met the burden of demonstrating that he was entitled to an automatic promotion to E-3 or to E-4. With regard to plaintiff's time-in-grade, the September 13, 2019 AFBCMR advisory opinion from the Air Force Personnel Center/Enlisted Promotions indicated that, without plaintiff's court-martial conviction, the earliest date that plaintiff would have been eligible for promotion to E-3 would have been June 26, 2013, and the earliest that he would have been eligible for promotion to E-4 would have been February 26, 2015. With respect to the criteria which contributed to plaintiff's not being promoted, plaintiff had received two Article 15s, one on October 14, 2011 for assault and one on December 17, 2012 for dereliction of duty; plaintiff received two referral EPRs, one on August 21, 2012 for "unprofessional behavior," and for violating "a no-contact order," and one on August 19, 2013, which indicated that plaintiff had failed to meet his primary duties, including a "judgment lapse; mbr [member] failed to complete mx [maintenance]." (alterations added). Plaintiff also was not selected for reenlistment by his supervisor on February 23, 2013, which plaintiff's unit commander approved. Plaintiff, therefore, was not going to be evaluated for promotion before June 26, 2013, which was the first date on which he would have been eligible for promotion to E-3. There also is no evidence in the Administrative Record currently before the court that plaintiff received a written recommendation for promotion by the relevant promotion authority, which, as discussed above, is required for promotion to both E-3 and E-4. The AFBCMR did not act arbitrarily when it denied plaintiff's request for promotion to E-3 because he did not meet the minimum requirements for promotion eligibility to E-3. Moreover, due to the fact that plaintiff was not entitled to promotion to E-3, it was not possible for him to accrue the required time-in-grade to be promoted to E-4. Accordingly, the court finds that the AFBCMR did not act arbitrarily when it denied plaintiff's promotion requests.

A remaining issue is whether plaintiff is entitled to any back pay at the E-2 rate. In this regard, plaintiff states that he "improperly received backpay as an E-1 for the period of confinement. This court should grant him backpay at the E-2 rate." Plaintiff asserts that

> [t]he government has conceded that Plaintiff's correct pay grade for the period of confinement and afterwards was E-2 because the court-martial convictions [sic] which caused his reduction from E-2 to E-1 [sic] were [sic] set aside. The government, however, apparently only provided him with backpay for the period of confinement at the E-1 rate. Therefore, Plaintiff is due, at a minimum, backpay and allowances at the E-2 rate for the entire period of his confinement.

(alterations added; internal references omitted). Defendant addresses the E-2 back pay issue and states:

> Mr. Boyce requested back pay for two time periods at the AFBCMR. AR8 (back pay for period of confinement), AR10, Pl.'s MJAR at 8-9 (back pay for periods after confinement during court-martial retrial). The AFBCMR [sic] that back pay for his confinement was administratively resolved, and on the issue of back pay after confinement, the AFBCMR stated only that Mr.

> Boyce submitted no evidence that he was not paid. AR 1, 4. The United States has not been able to verify that all active-duty pay was provided regarding either period, so in the interest of justice this limited issue should be remanded to the board to determine whether Mr. Boyce received pay for all active duty service.

(alteration added).

The court finds that the case should be remanded to the AFBCMR for the limited issue of establishing the amount of pay plaintiff may be still due for his "period of confinement" and for "periods after confinement during court-martial" at the E-2 rate. The government should locate the records promptly and verify what plaintiff has been paid previously and what might not have been properly paid and is owed to plaintiff.

## C O N C L U S I O N

For the reasons described above, the court **DENIES** defendant's motion to dismiss, and **GRANTS** defendant's motion for judgment on the Administrative Record regarding plaintiff's requests for promotion to the ranks of E-3 or E-4. The court **DENIES** plaintiff's motion for judgment on the Administrative Record regarding plaintiff's requests for promotion to the ranks of E-3 and E-4. On the issue as to whether plaintiff received the proper pay at the E-2 rate during and after his confinement prior to his discharge, and thereafter during his court-martial retrial, this case is remanded to the AFBCMR for the limited review of determining whether plaintiff should receive additional compensation at the E-2 rate. The court will issue a separate Order to effectuate the remand to the AFBCMR.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**